IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TEMIKA RENA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-831-CWB |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction and Administrative Proceedings**

Temika Rena Jones ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on September 10, 2019—initially alleging disability onset as of December 31, 2018, which was later amended to January 22, 2020, due to back pain, sciatica, nerve problems, tendonitis, rotator cuff, stomach problems, disk disease, and spot on brain that causes memory problems. (Tr. 17, 104-05, 121-22, 140-41, 175-76, 215).[2] Plaintiff's claims were denied at the initial level on February 14, 2020 and again after reconsideration on July 19, 2021. (Tr. 119-20, 136-39, 173-74, 208-09, 215, 246, 255, 265, 267). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 215, 271, 274). After a hearing, the ALJ found Plaintiff not disabled on May 17, 2023. (Tr. 215-229).

---

[1]  Frank Bisignano became Commissioner for the Social Security Administration on or about May 7, 2025 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

On November 7, 2023, however, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ. (Tr. 237-240). The ALJ conducted a new hearing on August 15, 2024 and took testimony from Plaintiff and a vocational expert. (Tr. 17, 42-65). The ALJ took the matter under advisement and issued a written decision on September 13, 2024 that found Plaintiff not disabled. (Tr. 17-32).

The ALJ's written decision contained the following enumerated findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2024 (Exhibit B26D).

2. The claimant has not engaged in substantial gainful activity since January 22, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Meralgia paresthetica; Major Depression, Recurrent; Mild Anxiety Disorder, NOS; degenerative disc disease of the lumbar spine; obesity; panic disorder, attention deficit hyperactivity disorder (ADHD); attention deficit disorder (ADD); urinary incontinence; umbilical hernia; chronic idiopathic constipation; mild cognitive impairment; and recurrent episodes of paresthesia of left upper and lower extremity vs complicated migraines (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for [6]-8 hours and can stand and walk for 4 hours. She can occasionally climb ramps or stairs. She can never crawl, kneel, or climb ladders, ropes or scaffolds. She can frequently handle, finger, and feel with her left dominant hand. She has no limitations for the right hand. She is limited to simple routine tasks with only occasional changes in the work setting or duties. She can only occasionally interact with the public and cannot coordinate with coworkers on team tasks. She cannot work at unprotected heights or operate heavy, moving equipment. She cannot tolerate very loud noise or sunlight. The claimant can occasionally push/pull arm/hand/foot/leg controls with the left extremities, with no limitations as to the right extremities.

2

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 18, 1978 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19, 20, 23, 30, 31, 32). On October 30, 2024, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further proceedings. (Doc. 1 at p. 2; Doc. 10 at p. 11). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of jurisdiction by a Magistrate Judge (Docs. 6 & 7), and the court finds the case ripe for review pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) in that the court construes Plaintiff's supporting brief (Doc. 10) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 13) as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied and that the Commissioner's motion for summary judgment is due to be granted.

3

**II.    Standard of Review and Regulatory Framework**

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  In making a disability determination, the ALJ employs a five-step sequential evaluation process:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* 20 C.F.R. §§ 404.1520 & 416.920.[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who then must show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

---

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4]  Because the same sequence applies in both, cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.    Issue on Appeal

Plaintiff raises one issue on appeal: whether the ALJ properly evaluated the prior administrative medical finding of non-examining state medical consultant Gregory K. Parker, M.D.

## IV.    Discussion

Plaintiff argues in essence that the ALJ's decision does not properly articulate how the ALJ considered consistency and supportability in determining the persuasiveness of the medical opinion given by Gregory K. Parker, M.D.—the state agency consultant.  (Doc. 10 at pp. 3-8).  Specifically, Plaintiff argues that the ALJ failed to properly evaluate Dr. Parker's medical finding that she would be limited to occasional handling and fingering and also failed to explain how the medical evidence in the record undermined that opinion.  (*Id*. at pp. 8-11).

In response, the Commissioner contends that the ALJ properly applied the regulations in evaluating the persuasiveness of Dr. Parker's prior administrative finding.  (Doc. 13 at pp. 5-6). The Commissioner further contends that in determining Plaintiff's RFC the ALJ properly considered the entire record.  (*Id*. at pp. 6-8).

Because Plaintiff's claims were filed on September 10, 2019 (Tr. 104, 121, 141, 176, 215), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)."  *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, a requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."  *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, "[the agency] will consider those medical opinions or prior administrative medical findings" using the following factors: (1) supportability; (2) consistency;

(3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).  "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, *4 (M.D. Fla. Apr. 14, 2022); *Nix*, 2021 WL 3089309 at *6 ("The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.") (citing 20 C.F.R. § 404.1520c(a)-(c)); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("[The agency] will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, *3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"'[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s),' the agency 'will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis,'" and "the ALJ is 'not required to articulate how [he] considered each medical opinion or prior administrative

medical finding from one medical source individually.'" *Joseph D. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-152, 2023 WL 12148409, *8 (N.D. Ga. Mar. 16, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1)); *Davis v. Comm'r of Soc. Sec.*, No. 22-81728-CIV, 2024 WL 1183451, *10 (S.D. Fla. Jan. 17, 2024), *aff'd*, No. 24-10771, 2025 WL 1123853 (11th Cir. Apr. 16, 2025) ("On its face, [20 C.F.R. § 404.1520c(b)(1)] applies when one medical source provides multiple opinions," and "[i]t is clear that this regulation cannot be relied on by the Commissioner to permit an ALJ to group together opinions from multiple medical sources in a single analysis."). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, *9 (M.D. Fla. Sept. 20, 2021) (citations omitted); *see also Moore v. Kijakazi*, No. 8:23-CV-206, 2023 WL 8187216, *4 (M.D. Fla. Nov. 27, 2023) ("[A] 'logical bridge' simply means that 'an ALJ must articulate at some minimum level, her analysis of the evidence.' Ultimately, this requirement does not alter the substantial evidence standard.") (citations omitted); *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, *2 (11th Cir. Nov. 20, 2023) ("[The] ALJ must explain and address any conflicts between the RFC and medical opinions.").

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945

(11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). And "[i]t is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). All that is required is that "the ALJ state with clarity his reasons for his decision." *Sturdivant v. Soc. Sec. Admin., Comm'r*, No. 22-13952, 2023 WL 3526609,

*4 (11th Cir. May 18, 2023).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."  *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, *4 (S.D. Ala. Mar. 9, 2022).

At the reconsideration level, Dr. Parker opined that Plaintiff was limited to occasionally lifting twenty pounds, frequently lifting ten pounds, standing or walking four hours out of an eight-hour day, sitting six hours out of an eight-hour day, occasionally stooping and climbing ladders, ropes, scaffolds, ramps, and stairs, and frequently kneeling, crouching, and crawling.  (Tr. 164-65, 199-200).  Dr. Parker additionally opined that Plaintiff had manipulative limitations, namely that Plaintiff was bilaterally limited to occasional handling and fingering.  (Tr. 166, 201).  In support, Dr. Parker cited the June 11, 2021 consultative examination by Sam Banner, D.O. that showed diminished sensation to all fingertips during bilateral wrist compression testing.  (Tr. 166, 201, 1277).

In determining Plaintiff's RFC, the ALJ found Dr. Parker's prior administrative findings to be "largely persuasive."  (Tr. 30).  The ALJ noted that Dr. Parker opined that Plaintiff could perform light work, could stand and walk for four hours, could occasionally climb ladders, ropes, scaffolds, ramps, and stairs, could stoop, could frequently kneel, crouch, and crawl, and could occasionally handle and finger, bilaterally.  (Tr. 30).  The ALJ stated that the "general opinion that the claimant is limited to a reduced range of light work is consistent with the overall evidence of record and the residual functional capacity" and that the records did support that Plaintiff was limited to four hours of standing and walking.  (Tr. 30).  The ALJ noted that physical examinations showed that Plaintiff had a normal gait and that, although medical imaging showed

11

only mild degenerative disc disease at L5-S1, the most recent nerve conduction study did note an

abnormality. (Tr. 30). As to manipulative limitations, the ALJ determined the following:

> The limitations for bilateral handling and fingering are also not supported by the evidence of record, however the record does support manipulative limitations as to her left extremities at the level of frequent performance. At a few of her multiple hospital visits, she had some decreased upper extremity strength and diminished sensation, but at multiple other visits, she was noted to have full strength and no deficits in sensation. She had full grip strength and was able to perform fine and gross manipulation at both consultative exams. The claimant's transient diminished sensation could support a limitation for feeling with the left hand. The limitation in the residual functional capacity for handling and fingering on the left accommodates her left shoulder impairment.

(Tr. 30). In fashioning Plaintiff's RFC with regard to manipulative limitations, the ALJ determined

that Plaintiff could "frequently handle, finger, and feel with her left dominant hand" and that she

had "no limitations for the right hand." (Tr. 23).

As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC.

*Moore*, 649 F. App'x at 945. Accordingly, an ALJ "is not required to base[] [the] RFC on a

doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190, *6

(N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014));

*Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775, *2 (M.D. Ala. Oct. 19, 2022) ("Indeed,

'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular

medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation

and internal quotation marks omitted). While state agency medical or psychological consultants

are considered experts in Social Security disability evaluation, "[a]dministrative law judges

are not required to adopt any prior administrative findings, but they must consider this

evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. §

404.1513a(b)(1); 20 C.F.R. 416.913a(b)(1). The regulations provide that the Commissioner "will

not defer or give any specific evidentiary weight, including controlling weight, to any medical

12

opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(a).   "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084, *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775, *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."); *see also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443, *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases). Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'" *Id*. at *9 (citation omitted).

Although the ALJ found Dr. Parker's opinion to be "largely" persuasive, the ALJ was under no obligation to adopt every part of the opinion.   "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404, *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800,*8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719, *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*,

13

No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

Here, the ALJ's decision shows that the ALJ properly applied the regulations in considering Dr. Parker's administrative findings under 20 C.F.R. § 404.1520c and that the ALJ considered the entire record in conjunction with Dr. Parker's opinion in determining Plaintiff's RFC.  The ALJ noted Plaintiff's two consultative examinations with Dr. Banner, D.O.  (Tr. 25). The ALJ noted that in January 2020 Plaintiff presented with complaints of chronic pain in her neck, back, left hip, left shoulder, and bilateral hands.  (Tr. 25, 870).  The ALJ cited Dr. Banner's examination that showed that Plaintiff's range of motion in the left shoulder was decreased, that she demonstrated no pain or difficulty getting on and off the examination table, that her motor strength was full in the right upper extremity and both lower extremities, that her grip strength was full (5/5), bilaterally, and that her fine and gross motion in both hands were satisfactory.  (Tr. 25, 871-74).  The ALJ noted that Plaintiff had another consultative examination with Dr. Banner in June 2021 with results similar to the initial examination—being generally unremarkable except for diminished sensation in the fingertips during wrist compression testing.  (Tr. 25, 1277-78). The ALJ observed that Plaintiff had full range of motion throughout the spine and in all extremities and that motor strength was full in all extremities and fine and gross motions in both hands were satisfactory.  (Tr. 25, 1278-79).  Both examinations reflected that Plaintiff was able to button and unbutton clothing without difficulty.  (Tr. 874, 1279).

The ALJ further noted Plaintiff's multiple hospital visits from February 2020 through April 2024—noting that while Plaintiff occasionally complained of left-sided weakness, extensive testing, imaging, and examinations were generally normal.  (Tr. 25-26, 28, 1170-71, 1195, 1199,

1218, 1320, 1327, 1481, 1716, 1736, 1740, 1781, 1789, 1835, 2043, 2148).  The ALJ's decision

stated, in part, as follows:

> The claimant was admitted to the hospital in February 2020 after presenting to the emergency room with left-sided weakness and chest pain. Laboratory work-up was unremarkable and showed no acute findings. ...

> \*\*\*

> Hospital records document that the claimant presented to the emergency room multiple times for complaints of chest pain and left-sided weakness. Extensive testing and imaging, however, showed no etiology for her subjective complaints (Exhibits B16F, B17F and B21F). She was admitted overnight for further evaluation of left-sided weakness in May 2021. The claimant was diagnosed with conversion disorder as extensive workup was again unremarkable. The claimant was advised to see a psychiatrist, but she declined (Exhibit B18F). Unremarkable workup for the same symptoms at a different hospital in January 2021 are also documented (Exhibit B21F).

> \*\*\*

> In October 2022, she was admitted for workup of left-sided numbness and weakness and left sided headache. In the emergency room, she was observed to transfer from the wheelchair to the stretcher standing on her left leg without apparent difficulty. On exam, she had diminished sensation and strength on the left. Emergency department labs were unremarkable. Providers suspected the claimant's symptoms were related to complex migraine (Exhibit B23F). …

> \*\*\*

> Additional imaging did not identify an abnormality that would support the severity of the claimant's symptom complaints. An October 2023 MRI indicated an essentially normal MRI of the cervical spine, noting minimal disc bulges at C5-6 and C6-C7, and no acute intercranial abnormality (Exhibit B36F/96). A February 2024 MRI of the claimant's lumbar spine showed degenerative disc disease at L4-5 and L5-S1, noting mild disc bulges (Exhibit B36F/59). An April 2024 cervical MRI was essentially normal and made an incidental note of some enlarge[d] lymph nodes (Exhibit B36F/96). An April 2024 MRI of the thoracic spine was unremarkable (Exhibit B36F/96).

> \*\*\*

> Another nerve conduction study and electromyography was performed in February 2024 which was also normal for the bilateral lower extremities (Exhibit B36F/59). A third nerve conduction study and electromyography was performed in May 2024

showed and left meralgia paresthetica (Exhibit B32F/8). The claimant was treated with a nerve block (Exhibit B32F/4).

(Tr. 25-26).  The ALJ concluded that the overall treatment records reflected significant gaps in treatment for Plaintiff's physical and mental health conditions.  (Tr. 28).  The ALJ noted that hospital records indicated that some providers felt Plaintiff's symptoms of chest pain, weakness, and numbness in her extremities were secondary to psychiatric etiology and/or a conversion disorder.  (Tr. 28).  The ALJ further noted that records showed that Plaintiff had extensive lab work, imaging, and testing over several hospital admissions and that all results were generally unremarkable. (Tr. 28).  The ALJ also noted that imaging showed issues in Plaintiff's left shoulder but that she did not follow up with treatment.  (Tr. 28).

Plaintiff complains that the ALJ failed to cite to specific evidence when mentioning "multiple hospital visits" in discounting Dr. Parker's prior administrative medical findings. (Doc. 10 at p. 8).  However, the ALJ's decision reflects that the ALJ discussed the medical records in detail earlier in the decision—explaining that imaging and objective testing over multiple hospital visits were generally unremarkable—and provided citations to the exhibits in the record. (Tr. 25-26, 28).  "An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings." *Thaxton*, 2022 WL 983156 at *8 (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, ... we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (citation omitted)); *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) (citing *Rice*); *Adams v. Soc. Sec. Admin., Comm'r*, No. 23-11233, 2024 WL 2846726, *3 (11th Cir. June 5, 2024) ("And although ALJs are required to discuss consistency, their opinions

16

should be read as a whole and need not repeat a discussion of the facts that establish inconsistency, merely to place it near the conclusion that an opinion is inconsistent with the medical evidence.").

In addition to treatment records, the ALJ also considered Plaintiff's activities of daily living. The ALJ noted that Plaintiff could perform her personal care independently, prepare meals, perform household chores, drive, shop for groceries, count change, and care for her five children. (Tr. 24, 555-58). The ALJ further considered the prior administrative finding of Alton James, M.D. at the initial review level. (Tr. 29). Dr. James opined that Plaintiff could perform light work, could occasionally climb ladders, ropes, and scaffolds, could frequently climb ramps and stairs, could stoop, kneel, crouch, and crawl, and could frequently handle and finger, bilaterally. (Tr. 29-30, 115-16, 132-33). Like Dr. Parker's opinion, the ALJ found Dr. James's opinion to be "largely persuasive." (Tr. 30).

Plaintiff argues that, while the ALJ noted normal objective findings subsequent to Dr. Parker's opinion as a basis for rejecting his opinion, similar normal objective findings were documented in the medical records prior to Dr. Parker's RFC assessment, yet Dr. Parker concluded that Plaintiff was limited to occasional handling and fingering and the ALJ failed to explain how the subsequent medical records undermined that opinion. (Doc. 10 at p. 10). As stated above, the ALJ discussed the medical evidence in the record, which was referenced by the ALJ in assessing Dr. Parker's opinion, and the ALJ considered the entire record, including Dr. Parker's opinion, in determining Plaintiff's RFC. Further, Dr. James reviewed a substantially similar record of normal objective findings that likewise predated Dr. Parker's RFC assessment but found that Plaintiff had greater capacity to handle and finger than Dr. Parker opined. (Tr. 109-12, 115-16, 132-33, 154-59, 162-67).

Plaintiff further argues that there is medical evidence in the record that supports Dr. Parker's opinion. (Doc. 10 at p. 9). Plaintiff cites medical records from May 20, 2021 where fast examination on site was notable for both left arm droop and marked weakness of the left leg, where motor weakness continued to be observed on Plaintiff's left, where mild to moderate sensory loss was noted, where a CT scan of the head noted mild bifrontal volume loss, where an MRI of the cervical spine noted minimal right foraminal narrowing due to uncovertebral hypertrophy, and where an MRI of the lumbar spine revealed mild secondary central canal narrowing at L4-5 and L5-S1. (*Id*., citing Tr. 1195, 199, 1222, 1232-33, 1244, 1248-49). Plaintiff also cites medical records from October 29, 2022 showing that Plaintiff had three of five strength in her left upper extremity along with diminished sensation in her left arm, that weakness and sensory deficits were present, and that doctors suspected a complex migraine to be the cause of the numbness and loss of sensation. (*Id*., citing Tr. 1440, 1445, 1448). Plaintiff further cites medical records from May 2, 2024 that demonstrated weakness in her left extremities with the inability to hold the extremities up to gravity, a CT scan of her head showing generalized volume loss as well as periventricular white matter disease along with intracranial artherosclerosis, and suggestion that peripheral neuropathy could be a possible cause of the left sided symptoms. (*Id*., citing 1933, 1937, 1941, 1944, 1949).

The ALJ was not required to discuss every piece of evidence in the record—as the decision showed that the ALJ considered Plaintiff's medical condition as a whole. *Coley*, 771 F. App'x at 917; *Dyer*, 395 F.3d at 1211. The evidence to which Plaintiff cites does not undermine the ALJ's determination. Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'" *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, *7

(M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)) (brackets added).  "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."  *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, *1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.  The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted).  Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand."  *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.'  'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

Based upon the entire evidence, the ALJ's decision indicates that the ALJ properly evaluated the supportability and consistency of Dr. Parker's opinion and that the ALJ met the articulation requirement of 20 C.F.R. § 404.1520c(b)(2).  The ALJ considered Dr. Parker's opinion along with the record as a whole in determining Plaintiff's RFC.  Accordingly, the court finds that the ALJ's evaluation of Dr. Parker's opinion was supported by substantial evidence.

Plaintiff argues that the ALJ's alleged error in evaluating Dr. Parker's opinion was not harmless because, when questioning the VE at the hearing, the ALJ proposed a hypothetical that included the corresponding manipulative limitations opined by Dr. Parker—to which the VE responded that there would be no work available.  (Doc. 10 at p. 11, citing Tr. 63).  But because the ALJ's rationale for deviating from Dr. Parker's administrative finding was reasonable and supported by substantial evidence, Plaintiff's argument regarding the potential vocational impact of additional limitations is irrelevant.  *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882-83 (11th Cir. 2019) ("[A]n ALJ need not include findings in the hypothetical that the ALJ finds to be unsupported ... .  [B]ecause Borges's RFC, which is supported by substantial evidence ... matched the ALJ's first hypothetical question at the hearing, he did not need to rely on these more restrictive hypotheticals.") (citations omitted); *Crawford*, 363 F.3d at 1161 (stating that an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"); *Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 764 (11th Cir. 2019).

## V.    Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 10) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 13) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

20

**DONE** this the 3rd day of March 2026.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**
